### O. T. BASSETT v. JESSE A. MITCHELL.

LOT CLAIMANT—*Estoppel.*   Where a settler upon a lot, claiming under the act of Congress of May 14, 1890, fails to assert any right to the lot before the board of townsite trustees, and such failure was wholly his own laches, he becomes thereby estopped from obtaining relief in a court of equity.

*Error from the District Court of Oklahoma County.*

Action commenced in the district court of Oklahoma county by Jesse A. Mitchell against O. T. Bassett and J. C. Wellwood, to declare them trustees for Mitchell and compel a conveyance from Bassett and Wellwood of real property.   Judgment in the lower court for Mitchell.   Bassett brings the case to this court.

*R. G. Hays* and *J. L. Jenkins*, for plaintiff in error.

*Selwyn Douglas*, for defendant it error.

The opinion of the court was delivered by

DALE, C. J.:   May 1, 1891, Jesse A. Mitchell commenced a proceeding in the district court of Oklahoma county against O. T. Bassett and J. C. Wellwood, to declare Bassett and Wellwood his trustees, and to decree a conveyance by Bassett and Wellwood of lot 21,

in block 5, in the city of Oklahoma City, Oklahoma county. Mitchell, in his complaint, alleged, in substance, that at the time Oklahoma was opened to settlement, he was qualified to acquire title to land therein, and that on the 23d day of April, 1889, he selected and occupied the lot above described, and has since continued to reside upon and improve it, and at the time of the institution of this suit, he had improvements thereon to the value of $500; that under the act of congress of May 14, 1890, relating to townsites in Oklahoma, the land had been duly entered by trustees appointed by the proper authorities, which entry was made for the several use and benefit of the townsite claimants; that he notified said townsite trustees of his occupancy and improvements upon the lot, and made a claim thereto; that he understood this to be the only application necessary; that being an occupant of the lot, he relied upon the trustees to notify him of any adverse claim to it; that the lot was not awarded on the day designated by the regulations governing the actions of the trustees, and he was not notified of any adverse claim; that the defendant Wellwood was never a *bona fide* inhabitant of the townsite, or of the lot, and was not entitled to a deed; that Wellwood made an application for a deed, representing that he was an inhabitant of the townsite, and an occupant, under claim of right, to the lot; that by false statements said Wellwood procured a certificate from the authorities of Oklahoma City, but it was revoked before the trustees entered the townsite; that the certificate, after such revocation, was presented to the trustees as a basis for his, Wellwood's, claim to the lot; that under the laws and regulations governing the action of the trustees in the disposal of lots, said Wellwood not being an inhabitant of said townsite, and an occupant of said lot, was not entitled to a hearing on his application, and it was error of law

and a neglect on the part of the trustees in not making the proper, required and legal notice and investigation before awarding him, Wellwood, a deed to said lot; that Wellwood represented himself to said trustees as being the owner of the lot and entitled to a deed for the same on October 15, 1890, when in fact he had on October 9, 1890, transferred the same to Bassett by quit claim deed, in consideration of $250; that at the time of such transfer, the actual value of the lot was $1,500, and that all the improvements on said lot were placed there by him, Mitchell; that neither of the defendants have any improvements on the lot, and the occupancy of the plaintiff was always notorious; that Bassett was not a *bona fide* purchaser of the lot; that the trustees awarded the deed to the lot to Wellwood on false statements, etc., without notice to the plaintiff, and this was error of law, and a mistake of fact, and a neglect upon the part of the trustees.

To this complaint, Bassett demurred, which was overruled by the court; whereupon he filed a separate answer, alleging, in substance, that the townsite trustees, after proving up the townsite, in pursuance of law, proceeded to award to the occupants of the townsite, the lots to which they were entitled, and for that purpose set October 6, 1890, as a day on which they would set off to the occupants their respective lots, and for more than fifteen days prior thereto, caused a notice thereof to be posted in the Oklahoma City papers. The notice is set out as an exhibit in the answer and is addressed to all persons interested or concerned in the townsite, and upon its face recites that the survey and plats have been completed, and that on October 6, 1890, the board would proceed to set off and allot to persons entitled to the same, according to their respective interests, and lots and blocks to which the occupants thereof should be entitled, under the provisions of the act of congress of

May 14, 1890, notifying all persons claiming any of said lots that they were required to make application to the board, under oath, and in writing, and on blanks to be furnished by the trustees, on or before that day, setting forth the grounds of their respective claims to lot or lots in Oklahoma City. The notice further set out that no application filed after that date would be considered where it would operate to the institution of a contest, unless a legal excuse for filing out of time should be shown. The answer then further alleged that on the day designated, the de-defendant Wellwood, being the only applicant and legal occupant of the lot, the trustees having no notice of the claim of Mitchell thereto, and Wellwood having filed his application for the lot, in accordance with the rules, and paid the fees, the lot was awarded to him by the trustees, and deed afterwards executed and delivered to him, which was filed for record October 15, 1890; that he, Bassett, in good faith, and after the deed had been made by the trustees, purchased the lot from Wellwood for $250; that at the time of such purchase he was ignorant of the plaintiff's claim; that although the deed bears date October 9, that it was not delivered and the purchase money paid until October 15th. As other exhibits to this answer appear the application of Wellwood for a deed to the lot in controversy, which was duly filed with the townsite trustees; the trustees' deed to Wellwood and the deed from Wellwood to Bassett. Mitchell's reply raised no new issue in the case. Upon the issues thus joined, the case was ordered to William H. Clark, as referee to take testimony, and after the testimony was complete, the judge referred the case to H. H. Howard, as a referee, to determine the questions of fact, under the evidence, and present his conclusions of law, which was done. It will not be necessary in this case to notice the findings of fact made by the

referee, except generally to say that the claims of each party, as set forth in their pleadings, appear to have been substantiated by the findings of fact as made by the referee. In his conclusions of law, the referee, among other statements, says:

"I do not hesitate to say, at the outset, that the rights of the plaintiff were clearly superior to those of the defendant, J. C. Wellwood, and·that, upon a contest being had before the board of townsite trustees, their decision would have been in his favor. This conclusion resolves the controversy into an inquiry, not of the relative or respective rights of the plaintiff and Wellwood, prior to October 15, 1890, but of the rights of the plaintiff and defendant, Bassett, when this suit was filed on October 16, 1890. The defendant failed, absolutely, to assert, in a legal way, his rights, until the title had passed from the trustees to Wellwood, and from him to Bassett, but immediately brings this action to recover, what he claims, and it seems correctly, he could have recovered, in the court especially created to hear and determine claims."

And, further on in his conclusions, states that "the failure to assert his right before the trustees is wholly his own fault. If the proceeding before the board was regular, and no fraud perpetrated, his rights would be gone, beyond all doubt. That the plaintiff has cause for complaint against himself is certain; it remains to be seen how far he has such cause against the trustees and the defendant. * * * He did not attempt to comply with the law or their requirements, and consequently is not in a position to say that they denied him any right demanded; if they did anything for which he may complain, it was in the *ex parte* transaction by which the premises were conveyed to Wellwood."

The report of the referee finding for the plaintiff below was, over the objection of the defendant, Bassett, confirmed by the court, and its judgment and decree rendered, declaring Bassett the trustee for Mitch-

ell, and directing a conveyance. To reverse this judgment the case is brought here, and numerous assignments of error set forth, but it will not be necessary for us to consider only the seventh, which is as follows:

"The court erred in confirming the report of the referee and the conclusions of law made by him, and in rendering judgment thereon."

In *Twine v. Carey*, decided by this court (2 Okla. Rep. 249), it was held that a court of equity had no jurisdiction, when it is apparent from the petition that the plaintiff had a remedy at law and failed to avail himself of it, and shows no good reason for such failure, and wherein it also appears that he was not entitled to the relief prayed for. In the same decision the court further held:

"Before a court of equity will interfere to declare the holder of the legal title a trustee for an adverse claimant, said adverse claimant must show in his bill for relief that he has availed himself of all the rights before the land department officials, and that he has performed every requirement of the law and rules regulating the acquirement of title, applicable to the land he claims, and he cannot set up his own laches, neglect, mistake, or inadvertance as an excuse for failure to comply with the law, unless such fault was brought about by the fraud, wrong, or misconduct of his adversary."

Under the pleadings in this case, it appears that both Wellwood and Mitchell were claimants for the lot in controversy; that Wellwood prosecuted his claim before the tribunal which congress had created for the purpose of passing title to the party to whom title should be awarded. Mitchell failed to appear before the board or in any way to assert his title to the property before such tribunal. In his conclusions of law the referee finds that: "If the proceeding before the board was regular and no fraud perpe-

trated, his rights would be gone beyond all doubt;" and finds that he did not attempt to comply with the law, or the requirements of the townsite board, and consequently is not in a position to say that they denied him any right demanded. But the error of the referee was in holding that Mitchell was a proper party to try the question of fraud as between Wellwood and the United States. If Wellwood perpetrated a fraud upon any person, it was upon the United States; it was not upon Mitchell; Mitchell was asking for nothing, consequently his rights were not invaded. As between Mitchell and Wellwood, before the tribunal especially created to try the issue of right in the land in controversy, no question was raised by Mitchell as to Wellwood's right to the lot.

As stated in *Twine v. Carey, supra,* such board was created for the purpose of hearing and deciding disputed questions arising between claimants to lots, and if parties failed to assert their rights before such tribunal, courts will not aid them.

The decision of the referee seems to have been based entirely upon an alleged fraud perpetrated by Wellwood upon the board of townsite trustees. We do not think Mitchell could complain of such fraud. The government of the United States, might, if title to the lot still remained in Wellwood, institute an action to cancel the deed, for fraud in the procurement thereof; but this is not a proceeding by the government for such purpose, and the title to the property having passed to Bassett, it is doubtful if the government could now be heard to institute any proceedings for the cancellation of such patent; but, however that may be, and we are not called upon to decide that question, it is clear to us that Mitchell, having wholly failed to assert any right to the lot before the proper tribunal, and such failure being wholly of his own laches, he is estopped from coming into the courts to

contest any action which the townsite trustees may have taken in disposing of the lot question.

The judgment of the lower court is reversed and the case remanded with direction to award judgment for the defendant, Bassett.

Scott, J., having presided at the trial below, not sitting; all the other Justices concurring.